Rosemary Helen HUBER, Respondent,

v.

Leonard Joseph HUBER, Appellant.

No. 44992.

Missouri Court of Appeals, Eastern District, Division Three.

April 5, 1983.

---

Claude Hanks, St. Louis, for appellant.

Rosemary Helen Huber, respondent, pro se.

REINHARD, Judge.

Husband appeals from three trial court orders adjudging him to be in contempt.

The marriage of the parties was dissolved by decree on January 15, 1981. The decree ordered husband to pay various debts incurred during the marriage and to pay any and all debts on the marital residence which was awarded to wife as her sole property. On September 3, 1981, wife filed a motion for contempt alleging that husband had failed to make payments on the loan secured by a deed of trust on the house and that he had failed to pay certain debts incurred during the marriage. A show cause order was issued, and husband filed an answer and a motion to modify the dissolution decree. A hearing was held on October 1, 1981.

Wife introduced evidence of the following facts. Wife's home was encumbered by two notes secured by deeds of trust. Past-due payments on those notes totalled $3,926.62. The bank holding the notes had instituted foreclosure proceedings, and wife's home was to be sold at 10:00 a.m. on October 3, 1981, two days after hearing, unless the past-due amounts were paid in full. Husband had also failed to pay $851.58 in debts incurred during the marriage. Husband's take-home pay from his job as a truck driver was between $1400.00 and $1500.00 per month, and he owned a farm worth approximately $142,000.00 which was encumbered by a note, secured by a deed of trust, in the amount of $85,000.00.

Husband testified that he understood the terms of the dissolution decree and that he had not paid the sums required by the decree because he did not have sufficient funds. He testified that he had remarried shortly after the dissolution and that he contributed unspecified sums to the support

of his new wife and her children. He further testified that, as part of a premarital agreement with his current wife, he had conveyed to her 140 acres of his 165-acre farm in exchange for $20.00 and release of a debt of approximately $2,000.00 he owed to her. He stated he had, since the dissolution, continued to make various expenditures for the operation and improvement of his farm.

The court found that husband had failed to pay the sum of $851.58 to wife as required by the dissolution decree and that he had also failed to pay $3,926.62 on the notes on wife's home as required by the dissolution decree. The court further found that husband was able to pay these amounts and that he had intentionally and contumaciously placed himself in a position so that he could not pay. The court specifically found that husband had continued to make expenditures and payments on a farm, "140 acres of which purportedly did not belong to him," and that he had continued to make payments on his other obligations. The court, therefore, found husband to be in contempt and sentenced him to serve 90 days in the county jail. The court, however, suspended execution of the sentence until 9:00 a.m. on October 3, 1981, to give defendant the opportunity to purge himself of contempt by paying $4,778.50 plus costs. The court denied husband's motion to modify the dissolution decree.

On October 3, at 10:00 a.m., wife's home was sold at a foreclosure sale because the past-due amounts had not been paid. The sale price was $47,900.00, of which wife received $102.98. At 10:20 on October 3, the court issued an order of commitment and warrant of arrest providing that husband be arrested and confined to county jail for 90 days or until he purged himself of contempt, whichever occurred first. Husband was arrested and confined.

On October 8, 1981, wife filed a motion to amend the court's judgment of October 1 to require husband to pay wife the full sale price of her home, $47,900.00, and attorney's fees in order to purge himself of contempt. On October 9, 1981, husband posted a cashier's check in the amount of $4,824.50, and the court ordered him released from jail. However, the court specifically provided that husband had not yet purged himself of contempt and that his release was contingent on the outcome of the hearing on wife's motion to amend the contempt judgment. The court ordered husband to appear on October 17, for the hearing on wife's motion.

Husband did not appear at the October 17, 1981, hearing, and his attorney could not account for his absence. Husband's current wife testified about his absence, and the bank cashier testified about the foreclosure sale of wife's home. The court refused to permit husband's attorney to introduce evidence about husband's inability to pay a larger amount, but the court did take notice of the evidence introduced at the hearing of October 1, 1981.

The court found wife's motion to amend the judgment was timely and amended the contempt order to provide that in order to purge himself of contempt husband would have to pay $43,870.10, the full amount of the sale price of the home less the $102.98 wife had received from the sale and less the $3,926.62 he had already posted with the court for mortgage payments. The court issued an order of commitment and warrant of arrest ordering that husband be arrested and confined to county jail for the remainder of his 90-day term or until he purged himself of contempt. In addition, the court found husband to be in direct contempt of court by failing to appear and sentenced him to a consecutive 30-day term in jail for this direct contempt.

On appeal, husband challenges the October 1 order adjudging him to be in contempt and ordering him to pay $4,778.50 plus costs and the October 17 amended order adjudging him to be in contempt and ordering him to pay an additional $43,-

870.10. He asserts the evidence failed to support findings that he could pay those sums. However, the October 1 order was merged with the amended order of October 17. Thus, we need only consider husband's appeal from the October 17 order.[1]

■ Initially, we note that a spouse may be held in contempt for a conscious failure to make mortgage payments pursuant to the property provisions of a divorce decree. *Yeager v. Yeager,* 622 S.W.2d 339, 343 (Mo.App.1981). When one spouse proves the other has failed to make required payments of a specified amount, the former has made a prima facie case of contempt. The other party then has the burden of proving his inability to make payments. Inability to pay is an affirmative defense and must be raised by the alleged contemnor. *Hopkins v. Hopkins,* 626 S.W.2d 389, 391 (Mo.App.1981). However, a court should not order imprisonment unless it is convinced that the contemnor is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court's order. *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567, 575 (Mo. banc 1976). A party may appeal from a judgment of civil contempt. *Teefey v. Teefey,* 533 S.W.2d 563, 565 (Mo. banc 1976).

■ We believe husband's raising the affirmative defense of inability to pay in the first proceeding gave rise to a duty on the part of the court to determine, in ruling on wife's motion to amend the judgment, whether husband had the ability to pay the much greater additional amount of $43,870.10. However, the court made no such findings in its amended judgment, nor did it specifically find that husband had intentionally and contumaciously rendered himself unable to pay the larger amount. Further, we find there is insufficient evidence

in the record before us to support such findings. Therefore, the court's amended judgment cannot stand. However, "in the interest of judicial efficiency, we will not reverse outright but will remand so that further proceedings may be had if plaintiff [wife] so desires." *Teefey v. Teefey,* 533 S.W.2d at 567.

■ Husband also claims that the court erred in sentencing him to a specific term of 90 days in jail. While this issue is now moot because we are reversing the judgment of contempt, we will consider it because it may arise again on remand. Husband is correct in asserting that a civil contemnor may be sentenced only to an indeterminate jail term that expires when he decides to comply with the court's order. *Division of Employment Security v. Weaver,* 614 S.W.2d 729, 731 (Mo.App.1981). However, the order in this case provided that husband be confined in jail for "ninety days or until he pays the additional amount of $43,870.10 ... whichever occurs first." Thus, the order provided that husband could purge his contempt and thereby secure his release at any time. That the court also set a limit to the time husband would spend in jail if he did not purge his contempt certainly did not prejudice husband in any way.

■ Husband also appeals from the court's order adjudging him to be in direct contempt of court for his failure to appear and sentencing him to a term of 30 days in jail. The court characterized husband's contempt as civil, but the judgment in question was clearly one of criminal contempt. The court's order holding husband in contempt for failure to appear was punitive in nature and its purpose was "to preserve the power and vindicate the authority and dignity of the court, and to punish for disobedience of its orders." *Chemical Fireproofing Corp. v. Bronska,* 553 S.W.2d 710, 715

---

1. We note, however, there was substantial evidence of husband's ability to pay the amounts ordered in the first decree.

(Mo.App.1977). A judgment of criminal contempt may not be reviewed by appeal. *Id.* at 719; *Teefey v. Teefey,* 533 S.W.2d at 564. We are, therefore, unable to review the propriety of husband's conviction of criminal contempt, and we dismiss his appeal from that conviction.

Accordingly, the court's order of October 17, 1981, adjudging husband to be in civil contempt and sentencing him to 90 days' imprisonment is reversed and remanded.

Husband's appeal from the October 17, 1981, order adjudging him to be in criminal contempt and sentencing him to 30 days' imprisonment is dismissed.

CRANDALL, P.J., and CRIST, J., concur.