**Marcia R. BROWN, Respondent,**

v.

**Leonard Lee BROWN, Appellant.**

**No. WD 34807.**

Missouri Court of Appeals,
Western District.

May 1, 1984.

Janice P. Noland, Camdenton, for appellant.

R. Brent Elliott, Pros. Atty., Chillicothe, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

The husband appeals a judgment for contempt for failure to pay child support under a decree of dissolution. The court ordered the husband to prison and set the purge amount at $7,117.46.

The marriage was dissolved in June of 1980. The decree awarded the custody of the three children to the wife and ordered the husband to pay $250 per month per child for support. In addition, the wife was awarded $2,500 attorney fee and $1 per month as maintenance to the wife. The child support money was to be paid to the circuit clerk as trustee for the wife. In March of 1981, the circuit clerk notified the husband of a $6,026.46 arrearage. The husband made no response and the delinquency was certified for prosecution.

The cause for contempt was not heard until April of 1983. The wife in the interim complained to the court of continued non-support from the husband, and in May of 1982 the parties appeared. The husband then informed the court he had filed for bankruptcy and simply could not meet the $750 monthly support judgment. The wife

agreed then to accept $300 per month instead "until he could get back on his feet." No constraint or other limit of time was imposed. The court concurred in this accommodation. The husband faithfully remitted $300 per month to the circuit clerk thereafter.

The arrearage as computed by the circuit clerk amounted to $15,429.46 at the time of the contempt proceeding. The wife conceded, however, that she received $2,500 directly from the husband in 1980, a sum not reflected in the circuit clerk records. The husband testified that, in addition, he made two payments of $750 each in year 1981 directly to the wife, sums also not reflected in the circuit clerk records. The wife did not clearly recall such payments, but did not deny they were made. The husband also testified to an additional $500 payment, but the wife contended the money was paid before any court judgment and so was not in discharge of any adjudicated support liability.

There was dispute as to when the eldest daughter became emancipated. She left home in August of 1980, returned and then married in August of 1981. The court determined that emancipation occurred on the event of the marriage in year 1981 so that the obligation of support continued until that time.

The husband acknowledged interests in a variety of business ventures, none of which was clearly delineated. At the time of the hearing, he sold furs on consignment through his parents and received commissions upon sales. He operated a used car lot owned and financed by his parents. Also, some video game machines placed at the Lake of the Ozarks were source of income. It was not clear what proprietorship the husband claimed in that property: one version was that a friend financed the venture for him to operate and that the friend "gets all the receipts"; another, that the friend "loaned me the money for the machines." In either event, the husband acknowledged that he received funds from that venture [how much, he could not say because the friend kept the records] but

estimated, "after the payments out of it, not over $500, monthly average." As to the used car lot, his mother kept the books so he could not say what profit that venture had returned. He estimated the profit for 1982, however, as "nil." As to the fur on consignment enterprise, he acknowledged sale of about thirty furs in November and December of 1982. He testified that the sale of a coat yields from $300 to $400 each—before expenses. He sometimes shares the profit with dress shops where the furs are displayed. He could not tell what he earned from this venture from sales in November and December of 1982— but did not say why. He could not tell the earnings expected in 1983, he said, because his books were kept on an annual basis and the year had not yet expired.

In short, the husband was unable to give any estimate of present income, simply because, by his account, the fluctuations made that impossible. It was his testimony that expenses exceeded income in years 1980 and 1981 so that he was not required to file federal tax returns for those periods. He was discharged in bankruptcy in March of 1981 and offered that certificate as further proof of an inability to pay child support.

■ The husband alleges numerous errors. The first contends that contempt may be adjudicated only when conventional means—such as execution on the money judgment—do not avail. The law imposes no such limitation. To be sure, *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567, 575[1–3] (Mo. banc 1976), invests the court with discretion to condition the contempt adjudication on a prior reasonable effort to make collection by other available remedies. That discretion was not exercised in favor of the husband by the court. The only antecedents the law imposes to such a contempt proceeding are the delinquency in support [or maintenance] payments, notice of the arrearage to the obligor, and the consent of the obligee that a contempt action shall initiate for the nonpayment. § 452.345.4, RSMo Supp.1984.

The other complaints are variants of the basic contention that the judgment does not sufficiently formulate an adjudication of civil contempt. The husband contends that, not only was there no evidence of an ability to pay or that nonpayment was brought about by his own conduct which rendered the discharge of that obligation impossible, but that these declarations of the judgment are mere conclusions without description of the circumstances which constitute the contempt. The husband contends also that the judgment assigns arbitrary sums of delinquency, figures, in any event, the result of miscalculations.

The formal adjudication of the civil contempt against the husband issued as a Judgment, Sentence, And Commitment. That entry recites that in June of 1980, on dissolution of the marriage, the court ordered the husband to pay to the wife the sum of $750 per month for the support of the three children. That formal entry recites also that one of the children was emancipated [by marriage] in August of 1981. The entry then continues:

. . . .

3. *That the Respondent* has failed to comply with the Order of the Court and has failed and refused to pay said child support and maintenance[1] . . . .

4. That the Respondent has the ability to pay said child support and that his failure or inability to pay said child support was occasioned by his own conduct and that he has by his actions placed himself in a position which made compliance impossible;

5. That the Respondent, Leonard L. Brown, is in contempt of this Court for his willful refusal to comply with the Order of this Court.

. . . .

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Leonard L. Brown be incarcerated in the Livingston County Jail . . . however the respondent Leonard L. Brown may purge himself of said contempt by paying the sum of $7,117.46 towards his child support obligations . . . .

■ A civil contempt is not fully adjudged unless the order of commitment contains a recital of the particular facts and circumstances which constitute the contempt. *Ex Parte Ryan*, 607 S.W.2d 888, 891[6] (Mo.App.1980). That is because in such a civil prosecution, the contemnor is his own jailer, and the judicial declaration of facts, therefore, informs him the conditions to be met to purge the contempt and so be free of the commitment. *Brown v. Brown*, 646 S.W.2d 888, 889[4] (Mo.App. 1983). The obligee of a support judgment proves a prima facie case of contempt by evidence of an obligation to support under a judgment duly rendered, and the failure of the obligor to make the payment as ordered. *Huber v. Huber*, 649 S.W.2d 955, 958[1–4] (Mo.App.1983). Thereupon, the burden rests on the obligor to prove financial inability to pay and that the inability is not a consequence of personal intentional and contumacious conduct. *Hopkins v. Hopkins*, 626 S.W.2d 389, 391[1, 2] (Mo. App.1981). Where the obligor attempts no evidence, the contempt stands proven. In that event, the trier of fact assumes—from want of dispute—that the financial ability of the obligor at the time the support order was entered remains intact, and the legal conclusion of ability to pay suffices as a basis for judgment and commitment. *Gross v. Gross*, 557 S.W.2d 448, 454–55 (Mo.App.1977); *Hopkins v. Hopkins*, su-

---

1. The certification of delinquency against the husband by the prosecutor was for *both* child support and maintenance owed under the judgment of dissolution. The judgment of contempt [¶ 3] adjudges the delinquency as to both, the child support and maintenance obligations. The purge order of the Judgment, Sentence, And Commitment, on the other hand, allows the contemnor purgation from contempt on payment of the child support delinquency. The

Motion for Contempt brought by the prosecutor, however, cites only the failure to pay child support as the basis for the contempt proceeding. The Order To Show Cause issued by the court against the husband requires the alleged contemnor to respond only as to nonpayment of child support. These irregularities are not litigated, but are mentioned because they appear in the very recitals of the Judgment, Sentence, And Commitment proceedings.

pra, l.c. 391–92[3]. In this case, however, the husband contested the evidence of the wife by proof of a bankruptcy, income insufficient in that interim to require payment of federal taxes, and the lack of a steady and gainful employment. That is not to say the finder of fact was required to credit that often perfunctory and masked evidence—much of it nothing more than *ipse dixit* and otherwise uncorroborated—but it was probative of an affirmative defense of inability to pay and was required to be found in the commitment by more than the legal conclusion the entry employs. For that reason, if for no other, the judgment of contempt must be vacated. In *Ex Parte Brown,* 530 S.W.2d 228, 231[1] (Mo. banc 1975); *Leslie v. Leslie,* 620 S.W.2d 48, 49–50[1] (Mo.App.1981).

The Judgment, Sentence, And Commitment of contempt is vacated.

All concur.