ROBERT G. DOWD, JR., Judge
C.S.G. ("Appellant") appeals from the judgment denying her motion to hold her ex-husband, R.G. ("Respondent"), in civil contempt for failing to fulfill his financial obligations under an order of protection.[1] We reverse and remand.
In July 2013, Appellant sought and received a full order of protection in which Respondent was ordered to refrain from abusing, threatening, harassing, stalking, communicating with or entering the residence of Appellant. The court also ordered Respondent to pay $600 a month to Appellant for mortgage payments. In August 2013, Appellant filed a motion for civil contempt, alleging that Respondent had not made the first monthly payment under the order of protection. Shortly thereafter, Appellant also filed a motion for indirect criminal contempt, alleging that Respondent had violated the other provisions of the order of protection by repeatedly threatening to kill her.[2]
The trial court held a hearing on both the motions for civil and indirect criminal contempt in April 2014. The court found Respondent in indirect criminal contempt and entered an order sentencing him to six months in jail. The court also entered an order finding Respondent to be in civil contempt for failing to make the $600 payments as he was obligated to do in the order of protection even though he had the ability to make those payments. The court ordered Respondent to return to court for "disposition of this matter." The order of protection automatically renewed in July 2014.
After multiple continuances, the parties returned to court in January 2015, at which time the court instituted a payment plan, ordering Respondent to make $300 monthly payments to Appellant. The court stated that the total amount owed would be determined at the next court appearance. The order of protection again renewed in July of 2015, containing all of the original orders therein including the monthly $600 payments. After a case conference in May 2016, the court entered an order setting a hearing and indicating that Respondent had agreed to pay $800 to Appellant before that hearing date and another $800 a month later. The court ordered that Respondent was also to continue making payments as previously ordered.
On June 17, 2016, Appellant filed another motion for indirect criminal contempt alleging that, again, Respondent was threatening to kill her. She also filed that day another motion to hold Respondent in *419 civil contempt for failure to pay her what he owed under the order of protection. On July 8, 2016, the court dismissed the "current" civil contempt motion because that matter was already being handled through the civil contempt motion Appellant had filed in 2013.
The order of protection expired in July 2016. In August 2016, in a separate cause of action, Respondent was charged with felony aggravated stalking of Appellant. He pled guilty and was sentenced in December 2016, ultimately being placed on five years' probation. Also in December 2016, based on threats Respondent had made about the judge in this case, the case was reassigned and set for hearing on January 6, 2017 before a new judge. At that hearing, the court took up both the motion for indirect criminal contempt and the civil contempt matter. Respondent did not appear, and his counsel explained that he had not been in contact with Respondent since August or September 2016, which would have been when Respondent was arrested on the stalking charge and was thereafter in custody awaiting resolution of that matter.
Appellant testified at the January 2017 hearing about the allegations in her motion for indirect criminal contempt and about the civil contempt matter. Appellant testified that Respondent was ordered to pay her $600 a month pursuant to the order of protection. She said that Respondent was found to be in contempt of that order in April 2014 for not paying and that when the parties returned to court for final disposition of the civil contempt matter in January of 2015, Respondent agreed to start getting in compliance by paying $300 a month. Appellant testified that Respondent made some payments from March 2015 to August 2016. Appellant had a list of these payments, which was admitted into evidence without objection. Appellant testified that, as the list showed, the payments were not made regularly and were often less than had been ordered, sometimes only $150 or less. Based on the total amount he owed under the original order ($600 a month from July 2013 until the order of protection expired in July 2016), minus the amounts he had already paid, Appellant testified that Respondent owed her $17,765.87.
After the hearing, the court immediately entered an order adjudging Respondent in indirect criminal contempt and sentenced him to six months in jail. Several months later, the court entered judgment denying Appellant's motion for civil contempt as moot, concluding that the July 8, 2016 order, entered by the previous judge, had dismissed the civil contempt matter in its entirety. Appellant moved to vacate or set the judgment aside, pointing out that only the duplicative motion for contempt filed in 2016 was dismissed in the previous judge's order, not the original 2013 motion for contempt. After hearing argument on the motion to vacate, the trial court entered a new judgment in order to clarify its reasons for denying Appellant's motion for civil contempt. The court noted first that "[Appellant] presented no evidence on the Respondent's ability to pay the amounts alleged to have been owed." The court also opined that the financial obligation contained in the order of protection was entered without legal authority, and therefore Respondent could not be held in contempt thereof. The court also indicated that the reasons outlined in its original judgment--the only one being that civil contempt was moot--was still a proper basis to find Respondent not in contempt. This appeal follows. We agree with Appellant that each of the trial court's alternate reasons for denying her motion for civil contempt are erroneous.
*420 As in any court-tried matter, this Court will affirm the judgment in a civil contempt proceeding unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. See Ream-Nelson v. Nelson , 333 S.W.3d 22, 28 (Mo. App. W.D. 2010). Moreover, a civil contempt ruling will not be disturbed on appeal absent a clear abuse of discretion. See id.
First, the trial court's conclusion that the civil contempt issue was moot is based on an erroneous reading of the previous judge's July 8, 2016 order. That order clearly dismissed only the duplicate motion for civil contempt filed in 2016, not the original and still pending 2013 motion:
The Court, having reviewed the Petitioner's request to hold Respondent in Civil Contempt filed on June 17, 2016, has determined that the Civil Contempt matter is already being handled in Division 16 through a Motion for Civil Contempt filed by Petitioner on September 3, 2013,[3] and thereafter served upon Respondent. Therefore, the Petitioner's current Motion for Civil Contempt is dismissed.
In other words, the court found the "current" 2016 motion unnecessary because civil contempt was "already being handled" by virtue of the 2013 motion. Nothing in this order can be construed as dismissing the unresolved 2013 motion for civil contempt or rendering moot the entire matter of civil contempt.
Second, the trial court's conclusion that the order to pay Appellant for the mortgage in the underlying order of protection was entered without legal authority constituted an impermissible collateral attack on that judgment. The full order of protection was a final judgment. See Section 455.060.1. Thus, the matters adjudicated therein could only be challenged by way of a direct appeal, and none was taken in this case. Lyons v. Sloop , 40 S.W.3d 1, 9 (Mo. App. W.D. 2001). It is improper in a contempt proceeding to challenge the underlying order because that constitutes a "collateral attack." Division of Employment Security v. Weaver , 614 S.W.2d 729, 731, n.4 (Mo. App. W.D. 1981). A "collateral attack" is any attempt to impeach a judgment in a proceeding that was not instituted for the express purpose of annulling that judgment, and a contempt proceeding is brought expressly for the opposite purpose: to enforce the judgment, not annul it. See Timmons v. Timmons , 139 S.W.3d 625, 629 (Mo. App. W.D. 2004). The underlying judgment may only be challenged in a collateral proceeding if it was void for lack of personal or subject matter jurisdiction or due process. See Blanchette v. Blanchette , 476 S.W.3d 273, 278 (Mo. banc 2015).
Here, the alleged defect in the underlying order of protection did not relate to jurisdiction or due process. Rather, it was an alleged lack of statutory authority under Section 455.050 that concerned the trial court in the contempt proceeding. Section 455.050.3(5) authorizes the court to "[o]rder respondent to make or to continue to make rent or mortgage payments on a residence occupied by the petitioner if the respondent is found to have a duty to support the petitioner or other dependent household members." If Respondent had no such "duty to support" Appellant, then the court may have lacked statutory authority *421 to include the mortgage payment in the order of protection. But a trial court's statutory authority differs from its constitutionally-granted subject matter jurisdiction, and a statutory limitation on a court's authority to act in a particular case does not deprive the court of subject matter jurisdiction over that type of action. See Hightower v. Myers , 304 S.W.3d 727, 733 (Mo. banc 2010) ; see also J.C.W. ex rel. Webb v. Wyciskalla , 275 S.W.3d 249, 253 (Mo. banc 2009) (subject matter jurisdiction is governed by Article V of the Missouri Constitution, which grants "original jurisdiction over all cases and matters, civil and criminal" to circuit courts). Thus, even if the order to make the mortgage payments was entered without statutory authority, that does not render the order of protection void or subject to a sua sponte collateral attack in a contempt proceeding.
Finally, the trial court's conclusion that Appellant "presented no evidence" of Respondent's ability to pay was an erroneous declaration and application of law. Appellant did not bear the burden to produce evidence of Respondent's ability to pay. "Inability to pay is an affirmative defense and must be raised by the alleged contemnor." Huber v. Huber , 649 S.W.2d 955, 958 (Mo. App. E.D. 1983). Appellant's only burden was to make a prima facie case for civil contempt by showing Respondent's "obligation to pay a specific amount or perform an action as required by the decree" and his "failure to meet the obligation." Tashma v. Nucrown, Inc. , 23 S.W.3d 248, 252-53 (Mo. App. E.D. 2000) (internal quotation marks and citations omitted). Once that prima facie case is established, the burden shifts to the alleged contemnor to prove his "inability to make payments or perform an action and that the non-compliance was not an act of contumacy." Id. If the alleged contemnor does not raise this defense or attempt to meet this burden of proof, the contempt "stands proven." Brown v. Brown , 670 S.W.2d 167, 170 (Mo. App. W.D. 1984) ; see also State ex rel. Watkins v. Watkins , 972 S.W.2d 609, 611 (Mo. App. S.D. 1998).
It is uncontested that Respondent was obligated to pay $600 a month under the order of protection. That order is in the record, which the court took judicial notice of after the January 2017 hearing, and Appellant testified to that fact as well. Appellant also testified that Respondent failed to meet that obligation. Respondent has never through the entire four years of this proceeding denied or disputed that the order of protection requires him to pay Appellant $600 a month and that he has failed to make those payments. Nor did he contest the evidence of those basic facts at the January 2017 hearing: he did not cross-examine Appellant on those points, did not point out any inconsistencies in her testimony or in any of her evidence, did not object to the admission of her exhibit showing his inadequate payment attempts and did not argue that she was not a credible witness.
Only one conclusion can be drawn from the uncontested facts under the correct legal standards: Appellant has established a prima facie case of contempt and the burden shifted to Respondent to prove that he was financially unable to pay and that the inability was not a consequence of his own intentional and contumacious conduct. Respondent's only effort to meet this burden was getting Appellant to agree on cross-examination that he could not send her money while he was in custody awaiting resolution of the stalking charges beginning in August 2016. But this was a month after the order of protection expired, and being in jail for those few months only explains--at best--his physical inability to personally put a check in the mail. Respondent has not produced any evidence to demonstrate that he was financially unable to make payments during those few months he was in jail, much less *422 during the three previous years the order of protection was in effect. In any case, the inability to send Appellant money while in custody was a direct consequence of his admitted act of stalking her and cannot excuse Respondent's noncompliance with his financial obligation to her under the order of protection. Respondent wholly failed to rebut Appellant's prima facie case of contempt.
The trial court is directed, on remand, to enter an order finding Respondent to be in civil contempt of the order of protection that was in effect from July 2013 to July 2016. That order of contempt must contain the "specific facts constituting contempt"-namely, his obligation to pay, his failure to pay and his failure to prove an inability to pay that was not due to an act of contumacy. See Tashma , 23 S.W.3d at 251. Then, the court must specify how Respondent can purge himself of the contempt. See Lyons , 40 S.W.3d at 10. This requires the court to choose a remedy, an enforcement mechanism that will "coerce compliance with the underlying order," which is the purpose of contempt. In re Marriage of Crow & Gilmore , 103 S.W.3d 778, 780 (Mo. banc 2003). Two such remedies to coerce compliance are compensatory per diem fines and imprisonment. Id. at 781.
If the court chooses imprisonment as the remedy, then prior to entering an order committing Respondent to jail the trial court must "convince itself" of Respondent's ability to pay. Hopkins v. Hopkins , 626 S.W.2d 389, 391 (Mo. App. E.D. 1981). "Otherwise the coercive purpose for civil contempt is frustrated as the contem[nor] has no key to the jailhouse door." State ex rel. Barth v. Corrigan , 870 S.W.2d 458, 459 (Mo. App. E.D. 1994). An order of commitment must contain specific factual findings of Respondent's ability to pay. Id. In making the requisite findings, the trial court may not simply rely on Respondent's failure to assert or prove the affirmative defense of inability to pay at the contempt stage. While the contempt itself can be established on such a "default" by the obligor, an order committing a person to prison cannot.[4] See Lyons , 40 S.W.3d at 10 (describing different findings necessary to support a judgment of contempt and an order of commitment). If the court cannot so convince itself with sufficient evidence that Respondent has the present ability to pay, then imprisonment for civil contempt would not be justified and the court would need to set forth a different remedy and method for Respondent to purge the contempt. See id.
All points on appeal are granted. The judgment denying Appellant's motion for civil contempt is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.
Philip M. Hess, P.J. and Mary K. Hoff, J., concur.

Respondent has not filed a brief.

The indirect criminal contempt proceedings are not at issue in this appeal, and Appellant's legal file correctly omits those pleadings because they are unnecessary to the determination of the questions presented here. But because the criminal and civil contempt motions proceeded simultaneously, this omission leaves confusing gaps in the procedural history of the case. Therefore, we mention the indirect criminal contempt pleadings, as well as separate criminal charges against Respondent, as needed to present a more complete picture of the proceedings.

The first motion for civil contempt was actually filed on August 20, 2013. September 3, 2013, is the date the first motion for indirect criminal contempt was filed. The docket entries for these filings simply state "motion filed" without any further identifying information, which may explain the confusion. Regardless, this order clearly meant to refer to the civil contempt motion, not the indirect criminal contempt motion.

Brown and Watkins , supra, suggest otherwise: that the obligor's failure to prove an inability to pay suffices to support a commitment order as well. See Brown , 670 S.W.2d at 170 (where the obligor presents no evidence of inability to pay, "the trier of fact assumes-from want of dispute-that the financial ability of the obligor at the time the support order was entered remains intact, and the legal conclusion of ability to pay suffices as a basis for judgment and commitment ") (emphasis added); see also Watkins , 972 S.W.2d at 611 (same). We rely on these cases for their correct conclusion that contempt stands proven by the obligor's failure to assert or prove the affirmative defense of inability to pay the underlying order at the contempt stage. But we do not agree with the notion that an obligor's mere failure to dispute his ability to pay at the contempt stage equates to a finding that he is presently able to pay, such that imprisoning him until he does so is justified.