

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ANNA EMEALIA BROWN, | ) | |
| | ) | |
| Respondent, | ) | WD84878 Consolidated w/WD84987 |
| | ) | |
| v. | ) | OPINION FILED: November 21, 2023 |
| | ) | |
| RICHARD LOTMAN BROWN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Joel P. Fahnestock, Judge

Before Division Three:  Lisa White Hardwick, Presiding Judge, Karen King Mitchell,
Judge and Cynthia L. Martin, Judge

Richard Lotman Brown ("Ex-Husband") appeals from the trial court's entry of a contempt judgment and a warrant of commitment following Ex-Husband's failure to remit to Anna Emealia Brown ("Ex-Wife") an equalization payment ordered by a judgment dissolving the parties' marriage ("dissolution judgment").  Ex-Wife has filed a motion to dismiss Ex-Husband's appeal and for an award of sanctions.  Finding no error, we affirm the trial court's contempt judgment and warrant of commitment.  Ex-Wife's motion to dismiss the appeal and for an award of sanctions is denied.

**Factual and Procedural History**

This appeal concerns a contempt judgment and warrant of commitment entered following Ex-Husband's failure to remit an equalization payment to Ex-Wife as ordered by the dissolution judgment. Ex-Husband is no stranger to this Court. *See Brown v. Brown*, 645 S.W.3d 75, 78 (Mo. App. W.D. 2022) (recognizing that Ex-Husband has appeared before this Court four times in a dispute concerning the trusts created by his parents); *Brown v. Brown*, 620 S.W.3d 257 (Mo. App. W.D. 2021) ("*Brown I*") (affirming the dissolution judgment in a *per curiam* order). Though this appeal does not directly involve a dispute concerning the trusts created by his parents, Ex-Husband has frequently referred to the trusts created by his parents in connection with Ex-Husband's claim in this case that he is unable to pay the equalization payment ordered by the dissolution judgment.

The procedural history preceding the trial court's entry of a contempt judgment and warrant of commitment is tortured, but important to describe. The trial court entered a judgment dissolving the parties' marriage on December 20, 2019, and then entered an amended judgment[1] (the dissolution judgment) on February 13, 2020, to remove the

---

[1]While the trial court denominated the amended judgment as a "Nunc Pro Tunc Judgment," it removed the inclusion of an award for maintenance in response to Ex-Husband's timely motion to amend the judgment, thereby altering the substance of the judgment. "The power to enter a nunc pro tunc judgment pursuant to Rule 74.06(a) 'constitutes no more than the power to make the record conform to the judgment already rendered; it cannot change the judgment itself.'" *Collins v. Collins*, 586 S.W.3d 282, 291 n.5 (Mo. App. W.D. 2019) (quoting *Wilson v. Lilleston*, 290 S.W.3d 795, 799 (Mo. App. W.D. 2009)). As such, the February 13, 2020 judgment was an amended judgment, not a nunc pro tunc judgment.

original judgment's erroneous inclusion of maintenance. The dissolution judgment

concluded that all assets identified by the parties were marital property. In the process,

the trial court rejected Ex-Husband's claim that certain property was non-marital, in part

because Ex-Husband had repeatedly failed to respond to discovery directed to

information and evidence that would support his claim. After dividing the marital assets,

the dissolution judgment ordered Ex-Husband to pay Ex-Wife an equalization payment in

the amount of $251,325.28 within thirty days of the entry of the dissolution judgment,

with simple interest to accrue at a rate of 9 percent per annum.

Ex-Husband filed a notice of appeal from the dissolution judgment on February

19, 2020.[2] On March 18, 2020, Ex-Wife filed an application for contempt and show

cause ("application for contempt") in the trial court. Ex-Wife's application for contempt

argued that Ex-Husband had not remitted the equalization payment to Ex-Wife within

thirty days of entry of the dissolution judgment. Ex-Husband filed a motion to stay

enforcement of the dissolution judgment and for leave to post a supersedeas bond

("motion to stay enforcement") in the appeal filed with this Court on March 22, 2020.

We issued an order on April 1, 2020, granting Ex-Husband leave to file a supersedeas

---

When we refer to the "dissolution judgment" throughout this Opinion, we are referring to the February 13, 2020 amended judgment.

[2]We take judicial notice of the records in WD83588, the February 2020 appeal filed by Ex-Husband from the dissolution judgment. *See Moore v. Mo. Dental Bd.*, 311 S.W.3d 298, 305 (Mo. App. W.D. 2010) ("'It has long been the law that courts may (and should) take judicial notice of their own records in prior proceedings which are (as here) between the same parties on the same basic facts involving the same general claims for relief.' Judicial notice of records from other related proceedings involving the same parties can be on the court's own motion or at the request of a party.") (quoting and citing *Hardin v. Hardin*, 512 S.W.3d 851, 854 (Mo. App. 1974)).

bond in an amount fixed by the trial court in order to stay enforcement of the dissolution judgment. Fourteen days later, the trial court entered an order giving Ex-Husband ten days to submit a $60,000 surety bond (the amount agreed upon by the parties), and ordered that, upon receipt of the surety bond, the trial court would stay enforcement of the dissolution judgment pending appeal. Ex-Husband and Ex-Wife later stipulated that Ex-Husband could satisfy the trial court's order by depositing $60,000 in an IOLTA account[3] created by Ex-Husband's attorney. Ex-Husband deposited $60,000 with his attorney on April 30, 2020.

In the appeal from the dissolution judgment, Ex-Husband argued, among other things, that the trial court committed error in the division of property, including deeming all assets marital property as a sanction for Ex-Husband's failure to respond to discovery, and in finding Ex-Wife's testimony credible as to whether she received discovery responses from Ex-Husband. We affirmed the dissolution judgment in *Brown I* on February 2, 2021. We denied Ex-Husband's motion for rehearing or application for transfer to the Supreme Court on March 2, 2021. Ex-Husband then filed an application for transfer in the Supreme Court. While Ex-Husband's application for transfer was pending in the Supreme Court, the trial court lifted its stay of enforcement of the dissolution judgment on March 23, 2021, and set Ex-Wife's application for contempt for

_____

[3]An IOLTA account is "a pooled client trust account held at an eligible and approved institution that is comprised of client and third person funds that cannot otherwise earn income for the for the client or third person in excess of the costs incurred to secure such income." Rule 4-1.145(a)(9).

4

a hearing. The Supreme Court denied Ex-Husband's application for transfer on May 4, 2021, and our mandate issued in *Brown I* on May 5, 2021.

On May 19, 2021, Ex-Husband filed a motion in the trial court seeking either relief from the dissolution judgment or modification of the dissolution judgment pursuant to Rule 74.06(b)(1) or (2)[4] ("motion for modification"). The motion for modification argued that reconsidering and amending the dissolution judgment was necessary because the trial court's valuation, and inclusion in the marital estate, of real property that Ex-Husband uses as his home ("Ex-Husband's home") was either: (a) a result of mistake, inadvertence, surprise, or excusable neglect in that Ex-Wife executed a special warranty deed in April 2009 ("2009 special warranty deed") conveying Ex-Husband's home to Ex-Husband as his sole and separate property, but failed to disclose the 2009 special warranty deed during the dissolution proceeding; or (b) a result of misrepresentation, fraud, or other misconduct in that Ex-Wife knew or should have known she was a party to the 2009 special warranty deed but nonetheless claimed under oath that Ex-Husband's home was marital. Ex-Husband further argued in the motion for modification that it was no longer equitable for the dissolution judgment to remain in force because making the equalization payment would result in Ex-Husband not having personal funds to cover his costs of living. In particular, the motion to modify claimed that the combined value of Ex-Husband's investment accounts had decreased significantly as a result of the economic downturn caused by the COVID-19 pandemic; that Ex-Husband had no other

---

[4]All rule references are to Missouri Supreme Court Rules (2021), unless otherwise indicated.

source of income; and that any court-mandated liquidation of his IRA accounts would result in tax penalties totaling approximately $120,000.

Ex-Wife filed an answer and counter-motion for sanctions and attorney's fees ("response to the motion for modification") on May 20, 2021. Ex-Wife asserted that, "[a]fter almost three years of continuous litigation and being denied by the [trial court], the Missouri Court of Appeals Western District, and . . . the Missouri Supreme Court," Ex-Husband continued to file "frivolous" motions that forced her to incur unnecessary attorney's fees while simultaneously refusing to pay "a single dime" of the equalization payment ordered by the dissolution judgment. Ex-Wife's response to the motion for modification asked the trial court to award her reasonable attorney's fees and costs.

The trial court held a show cause hearing on Ex-Wife's application for contempt on May 21, 2021. Ex-Wife testified that she had not yet received any portion of the equalization payment ordered by the dissolution judgment. Ex-Husband testified that although he is a beneficiary, he did not have access to accounts owned by the trustee of trusts set up by his parents because the trust documents contain a spendthrift clause. On cross-examination, Ex-Husband testified that although he deposited $60,000 as a supersedeas bond with his attorney to stay earlier enforcement of the dissolution judgment, that money had not yet been paid to Ex-Wife because Ex-Husband's outstanding legal fees needed to be paid out of the funds. At the conclusion of the hearing, the trial court took the matter under advisement. A later filing by Ex-Husband's attorney advised that a $45,000 cashier's check had been delivered to Ex-Wife's attorney on May 21, 2021, to be applied toward the equalization payment.

6

On June 3, 2021, the trial court entered an order denying Ex-Husband's motion for modification of the dissolution judgment. On June 10, 2021, the trial court entered a judgment of contempt ("contempt judgment") finding Ex-Husband in contempt of the dissolution judgment. The contempt judgment found that "[i]t is undisputed [that Ex-Husband] is in contempt of the [dissolution judgment]" in that Ex-Husband admitted that he had not yet paid the equalization payment. The contempt judgment further found that "[n]o credible evidence was presented showing [Ex-Husband] does not have the ability to pay" so that Ex-Husband did not meet his burden to prove that he is financially unable to pay the equalization payment. The trial court further found that an award of attorney's fees was appropriate as Ex-Husband's "contemptuous actions" resulted in Ex-Wife incurring attorney's fees in the amount of $1,628, plus interest at the statutory rate of 9 percent. Finally, the contempt judgment ordered that, "if [Ex-Husband] is unable to purge himself of contempt by 12:00 p.m. on June 23, 2021, this matter is set for sentencing with the possibility of confinement for [Ex-Husband]."

On June 23, 2021, Ex-Husband filed a motion to set aside the dissolution judgment and the contempt judgment ("motion to set aside"). The motion to set aside argued, yet again, that pursuant to Rule 74.06(b)(2), the dissolution judgment should be set aside because Ex-Wife misrepresented to the trial court that Ex-Husband's home was marital property in light of the 2009 special warranty deed. The motion to set aside also claimed that pursuant to Rule 74.06(b)(4), the dissolution judgment should be set aside because it is void as the decision to characterize all property as marital property resulted in a denial of Ex-Husband's right to due process based on "a technicality of sly litigation

7

tactics." With respect to the contempt judgment, the motion to set aside argued that Ex-Wife misrepresented the law in her application for contempt by relying on section 452.400.3[5] which applies only to visitation. Finally, the motion to set aside challenged the trial court's finding of contempt because Ex-Husband merely lacks liquidity to pay the equalization payment and should not be found in contempt for refusing to liquidate his retirement account to pay the equalization payment. Ex-Wife filed a response on June 29, 2021, that generally denied the allegations in the motion to set aside, and that included a counter-motion for sanctions and attorney's fees.

Ex-Husband's motion to set aside was still pending on July 15, 2021, when Ex-Wife filed a motion for a sentencing hearing to enforce the contempt judgment ("motion for sentencing hearing"). Ex-Wife's motion for sentencing hearing acknowledged receipt of $45,000 toward the equalization payment, but noted that no other payments had been made. Ex-Wife asked the trial court to set a hearing, to order Ex-Husband committed to the Jackson County Jail until he complies with the trial court's orders, and to order Ex-Husband to pay Ex-Wife's reasonable attorney's fees and costs incurred in enforcing the contempt judgment.

The trial court entered an order on August 13, 2021, directing Ex-Wife to file a substantive response to Ex-Husband's pending motion to set aside, and allowing Ex-Husband to file a reply. Ex-Wife filed a response on August 23, 2021. Ex-Wife asserted that Ex-Husband's Rule 74.06(b)(2) argument that the dissolution judgment should be set

_____

[5]All statutory references are to RSMo 2016 as amended through March 18, 2020, the date Ex-Wife filed her application for contempt, unless otherwise indicated.

8

aside because it was procured as a result of a misrepresentation was untimely pursuant to Rule 74.06(c) as it was filed more than one year after the dissolution judgment was entered. Ex-Wife also argued that the motion to set aside merely reiterated arguments that have been previously rejected in *Brown I*. Ex-Wife again sought an award of attorney's fees and costs. On August 31, 2021, Ex-Husband filed a reply that argued that although Rule 74.06(c) limits the time for filing a Rule 74.06(b)(2) motion to one year after the entry of a judgment, there is no such temporal limitation when the basis for relief from a judgment is that it is void (Rule 74.06(b)(4)), or no longer equitable (Rule 74.06(b)(5)). Ex-Husband's reply effectively conceded that his motion to set aside the dissolution judgment based on Ex-Wife's purported misrepresentation about the 2009 special warranty deed was untimely.

The trial court entered an order denying Ex-Husband's motion to set aside ("order denying the motion to set aside") on September 20, 2021. The trial court explained that Ex-Husband's Rule 74.06(b)(2) claim that the dissolution judgment was procured by misrepresentation was untimely under Rule 74.06(c); that the dissolution judgment was not void for lack of due process as Ex-Husband had proper notice of all proceedings and the trial court followed proper procedures; and that nothing new had arisen since the entry of the dissolution judgment to make enforcement of its provisions inequitable. The trial court also denied the motion to set aside the contempt judgment. The next day, the trial court entered an order setting a sentencing hearing to enforce the contempt judgment for November 10, 2021.

9

Meanwhile, Ex-Husband filed a notice of appeal on September 29, 2021 ("September 29, 2021 notice of appeal"). The September 29, 2021 notice of appeal purported to appeal from the trial court's June 3, 2021 order denying Ex-Husband's motion for modification (which sought modification of the dissolution judgment). The September 29, 2021 notice of appeal made no reference to the trial court's September 20, 2021 order denying the motion to set aside (which asked the trial court to set aside both the dissolution judgment and the contempt judgment). We acknowledged receipt of Ex-Husband's September 29, 2021 notice of appeal and assigned case number WD84878 to the appeal.

On October 25, 2021, this Court's staff counsel sent Ex-Husband's attorney a letter explaining that the September 29, 2021 notice of appeal did not attach a final, appealable judgment in that the June 3, 2021 order denying Ex-Husband's motion for modification was not denominated a judgment. The letter acknowledged, however, that in discussing the possible issues on appeal, the September 29, 2021 notice of appeal referred to a contempt judgment. The letter sought clarification from Ex-Husband's attorney about whether Ex-Husband was seeking to appeal the June 3, 2021 order denying Ex-Husband's motion for modification, or instead the contempt judgment, and requested that clarification be provided by November 8, 2021. Ex-Husband's attorney did not provide the clarification sought by staff counsel by the stated deadline.

On November 1, 2021, this Court's clerk of court sent Ex-Husband's attorney yet another letter advising that the appeal in WD84878 would be dismissed for failure to file a legal file unless that default was remedied on or before November 16, 2021. Ex-

10

Husband did not file a legal file by November 16, 2021. On November 17, 2021, we dismissed Ex-Husband's appeal. We reinstated the appeal on November 29, 2021, after Ex-Husband's attorney filed a motion to reconsider the dismissal order. Ex-Husband's attorney did not, however, clarify the trial court action from which the appeal was being taken.

In the meantime, proceedings to enforce the contempt judgment continued in the trial court. On November 10, 2021, the trial court held a sentencing hearing to consider whether to act to enforce the contempt judgment. Ex-Wife testified that she had received a $45,000 check toward the equalization payment and accrued interest but had not received any other payment from Ex-Husband. Ex-Wife asked the trial court to find that Ex-Husband still owed her $251,358.05 for the equalization payment and accrued interest, and to award her $5,750.50 in attorney's fees. Ex-Husband testified that he could not use the assets of a trust as to which he was a beneficiary to pay the amount owed to Ex-Wife. In lieu of liquidating an IRA held in his name in order to pay the remaining amount owed, Ex-Husband offered to transfer his IRA to Ex-Wife. Ex-Wife did not want to accept transfer of an IRA in lieu of the cash payment ordered by the dissolution judgment.

The trial court issued a warrant of commitment ('warrant of commitment") on November 11, 2021. The warrant of commitment ordered Ex-Husband to surrender himself to the court on or before Friday, November 12, 2021, at 5 p.m. to be held at the Jackson County Detention Center until he purges himself of the contempt. The warrant of commitment further ordered that, to purge himself of the contempt, Ex-Husband would

11

need to pay Ex-Wife $251,358.05 for the outstanding balance of the equalization payment and accrued interest, and $5,750.50 in attorney's fees. The warrant of commitment set a review hearing for December 10, 2021.

Ex-Husband did not purge himself of contempt on or before the deadline set forth in the warrant of commitment. The trial court forwarded the warrant of commitment to the Jackson County Sheriff on November 19, 2021. On November 22, 2021, Ex-Husband filed a motion to vacate, set aside, or correct the judgment or warrant of commitment ("motion to set aside contempt judgment or warrant of commitment"). The motion to set aside contempt judgment or warrant of commitment asserted that confinement was not appropriate to enforce the contempt judgment because there was no evidence presented at the November 10, 2021 hearing that Ex-Husband had the ability to pay the outstanding balance of the equalization payment and the attorney's fees. The motion to set aside contempt judgment or warrant of commitment argued that the trial court "overlooked the 'particulars' of [Ex-Husband's] hardship and the resultant difficulty of coercive liquidation of assets not intended for such." The trial court denied the motion to set aside contempt judgment or warrant of commitment on December 14, 2021.

On November 22, 2021, Ex-Husband also filed another notice of appeal ("November 22, 2021 notice of appeal") which purported to appeal from the November 11, 2021 warrant of commitment.[6] We acknowledged receipt of the November 22, 2021

---

[6] A judgment of contempt is an interlocutory order that is not final for purposes of appeal until it is enforced. *Johnson v. Johnson*, 668 S.W.3d 316, 322 (Mo. App. W.D. 2023). After a contempt judgment is issued, a party has two options: (1) "purge themselves by complying with the terms of the judgment of which the contempt is meant

12

notice of appeal and assigned case number WD84987 to the appeal. The November 22, 2021 notice of appeal did not attach a copy of the judgment or order from which the appeal was taken. This Court's staff counsel sent Ex-Husband's attorney a letter on November 24, 2021, asking that a copy of the judgment from which the appeal was being taken be filed by December 6, 2021.

On December 3, 2021, Ex-Husband's attorney filed a motion to consolidate the appeals pending in case numbers WD84878 and WD84987 because the cases deal with the "same substantive issues." On December 3, 2021, Ex-Husband's attorney also filed a letter with this Court that finally responded to staff counsel's request for clarification about whether the September 29, 2021 notice of appeal had been taken from the June 3, 2021 trial court order denying Ex-Husband's motion for modification (which had sought to modify the dissolution judgment) or from the contempt judgment. Ex-Husband's counsel's letter stated:

> This letter is intended to clarify the judgments that Appellant, Richard
> Brown, is appealing. Appellant is appealing the Judgment of Contempt

---

to coerce compliance, which makes the contempt judgment moot and unappealable;" or (2) "appeal the contempt order, but only after the contempt order has been enforced by imposition of a penalty." *Id.* When a contemnor is warned that enforcement of a civil contempt judgment will be by confinement unless the contemnor purges the contempt, the judgment of contempt "is not enforced until the issuance of a warrant of commitment or actual incarceration." *Keipp v. Keipp*, 646 S.W.3d 303, 305 (Mo. App. W.D. 2022) (quoting *Martin v. Martin*, 504 S.W.3d 130, 134 (Mo. App. W.D. 2016)). The contempt judgment in this case thus became final for purposes of appeal on November 11, 2021, when the warrant of commitment was issued.

An appeal from a contempt judgment that has become final by enforcement must be filed within ten days of the enforcement action. *Johnson*, 668 S.W.3d at 322 (citing Rule 81.04(a); *Long v. Long*, 469 S.W.3d 10, 16 (Mo. App. W.D. 2015)). Because the tenth day following the trial court's entry of the warrant of commitment fell on a Sunday Ex-Husband's appeal filed on Monday, November 22, 2021, was timely filed.

> entered on June 10, 2021 and the Warrant of Commitment entered on November 11, 2021. . . .[7]
>
> Any reference made to the Order of June 3, 2021 was made in error by counsel for the appellant and is not a judgment in which Appellant is seeking relief from.

The letter from Ex-Husband's attorney thus confirmed that Ex-Husband has not appealed the June 3, 2021 order denying Ex-Husband's motion for modification of the dissolution judgment pursuant to Rule 74.06(b). In addition, at no time has Ex-Husband filed an appeal from the September 20, 2021 order denying his June 23, 2021 motion to set aside (which sought to set aside the dissolution judgment and the contempt judgment pursuant to Rule 74.06(b) based on an alleged misrepresentation about a special warranty deed involving E-Husband's home and alleged due process violations).

On December 3, 2021, Ex-Husband's attorney filed a motion for stay of commitment pending appeal subject to Ex-Husband posting a supersedeas bond ("motion for stay of commitment"). On December 13, 2021, we consolidated case number WD84878 with case number WD84987, and remanded the motion for stay of commitment to the trial court for consideration.[8]

---

[7] The November 11, 2021 warrant of commitment was obviously issued after the September 29, 2021 notice of appeal. Fairly read, the December 3, 2021 letter from Ex-Husband's counsel confirms that the combined appeals in WD84878 and WD84987 challenge only the June 10, 2021 contempt judgment and the November 11, 2021 warrant of commitment enforcing the contempt judgment.

[8] Because Ex-Husband's request to file a supersedeas bond was not filed until after he filed his notice of appeal assigned WD84987, Rule 81.10 required permission to file the bond to be sought from this Court, at which time this Court exercised its discretion pursuant to Rule 81.10 to remand to the trial court for a determination in accordance with Rule 81.09. Rule 81.10 further provides that any supersedeas bond authorized after the

Following briefing by the parties, the trial court entered an order on December 21, 2021, pursuant to Rule 81.09(b) requiring Ex-Husband to post a supersedeas bond in the amount of $257,107.55[9] within thirty days as a condition of issuing a stay of commitment.[10] Ex-Husband applied to this Court for alteration of the supersedeas bond amount on January 3, 2022, pursuant to Rule 81.09(c), urging that he should not be required to liquidate his IRA to pay the equalization payment, and that if required to do so in order to post the supersedeas bond, his claim of inability to pay based on coercive liquidation of his assets would be rendered moot. This Court denied Ex-Husband's application on January 11, 2022. Ex-Husband submitted a check to the trial court in the ordered supersedeas bond amount on January 20, 2022, but the check was returned. Ex-Husband submitted a second check in the ordered amount to the trial court on February 3, 2022, but it too was returned. On February 9, 2022, the trial court entered an order providing Ex-Husband until noon on February 14, 2022, to submit a cashier's check in the amount of $257,107.55, and ordering that if Ex-Husband failed to do so, the trial court would direct the Jackson County Sheriff to serve Ex-Husband with the warrant of commitment and Ex-Husband would be held in the county detention center until he

---

notice of appeal has been filed "shall be filed in the trial court and the sureties therein shall be subject to the jurisdiction of the trial and appellate court."

[9]The record on appeal does not indicate why the trial court ordered Ex-Husband to post a supersedeas bond in an amount $1 less than the amount needed to purge the warrant of commitment.

[10]A supersedeas bond ordered and then filed pursuant to Rule 81.09(b) "shall be conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or if the judgment is affirmed, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may adjudge and award."

15

purged himself of contempt. Ex-Husband submitted the required cashier's check later that same day. As a result, the warrant of commitment has been stayed by virtue of Ex-Husband's filing of a cash supersedeas bond pursuant and subject to Rules 81.09 through 81.11.

**Standard of Review**

We review a court-tried case, including the trial court's judgment in a civil contempt proceeding, using the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Frawley v. Frawley*, 637 S.W.3d 140, 147 (Mo. App. W.D. 2021). Accordingly, we affirm the judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32. Moreover, we defer to the trial court's credibility determinations and the weight it afforded to evidence. *Frawley*, 637 S.W.3d at 147.

The trial court's ruling in a civil contempt proceeding is discretionary. *Merriweather v. Chacon*, 639 S.W.3d 494, 502 (Mo. App. E.D. 2021). Thus, we will not disturb the trial court's judgment in a contempt proceeding absent a clear abuse of discretion. *Frawley*, 637 S.W.3d at 147. "An abuse of discretion occurs when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (quoting *LaBarca v. LaBarca*, 534 S.W.3d 329, 335 (Mo. App. W.D. 2017)). The party challenging the trial court's ruling in a contempt proceeding bears the burden to establish that the trial court abused its discretion, and will not succeed if

16

reasonable persons could differ about the propriety of the trial court's action. *Merriweather*, 639 S.W.3d at 502.

## Analysis

Ex-Husband's opening brief was filed *pro se* and raises four points on appeal. Ex-Husband's first point on appeal refers to Rule 74.06(b) and argues that the trial court erred in finding him in contempt and in issuing a warrant of commitment because the division of property and the resulting calculation of an equalization payment in the dissolution judgment were obtained by fraud, are no longer equitable, and should not be enforced. Ex-Husband's second point on appeal argues that the trial court erred in denying "post-judgment pleadings alleging due process violations" because reliance on technical rules of practice involving discovery to characterize all assets as marital property in the dissolution judgment was inequitable. Although not specifically referenced in the point relied on, in the argument portion of the brief, it is plain that Ex-Husband's second point on appeal relies on Rule 74.06(b). Ex-Husband's third point on appeal is cross-referenced in the first point on appeal, and argues that the trial court abused its discretion in denying the Rule 74.06(b) motion for modification because it is no longer equitable to enforce the dissolution judgment in light of "[Ex-Husband's] personal, dilapidated finances." Ex-Husband's fourth point on appeal challenges the trial court's entry of the contempt judgment and issuance of a warrant of commitment based on Ex-Husband's claim that he is unable to pay the equalization payment.

17

*Ex-Husband's First, Second and Third Points on Appeal Are Not Preserved for Appellate Review*

Ex-Husband's first, second, and third points on appeal necessarily claim error based either on the trial court's June 3, 2021 denial of Ex-Husband's Rule 74.06(b) motion for modification of the dissolution judgment, or the trial court's September 20, 2021 order denying Ex-Husband's Rule 74.06(b) motion to set aside the dissolution judgment and contempt judgment. Neither trial court action is before us for appellate review.

Though Ex-Husband's September 29, 2021 notice of appeal (WD84878) referred to the trial court's June 3, 2021 denial of the motion for modification, Ex-Husband's attorney advised this Court on December 3, 2021, that Ex-Husband's consolidated appeals were limited to seeking review of the trial court's June 10, 2021 contempt judgment and November 11, 2021 warrant of commitment. In that same letter, Ex-Husband's attorney expressly disclaimed any intent to appeal the trial court's June 3, 2021 order denying Ex-Husband's Rule 74.06(b) motion for modification of the dissolution judgment, which relied on an alleged misrepresentation by Ex-Wife and a claim that it was no longer equitable to require Ex-Husband to pay the equalization payment to urge that the dissolution judgment should be set aside. Ex-Husband is bound by his attorney's representations. *See Miller v. State*, 558 S.W.3d 15, 21 (Mo. banc 2018) ("A party is bound by the actions of the party's counsel . . . .").

Moreover, neither the September 29, 2021 notice of appeal (WD84878) nor the November 22, 2021 notice of appeal (WD84987) purported to seek appellate review of

18

the trial court's September 20, 2021 order denying the motion to set aside. Ex-Husband's claims of error that rely on denial of motions filed in the trial court seeking relief pursuant to Rule 74.06(b) are not before us for appellate review.

The Rule 74.06(b) challenges to the dissolution agreement Ex-Husband raised in the motion for modification and in the later filed motion to set aside are not independently cognizable in connection with his challenge to the contempt judgment and warrant of commitment. "Civil contempt is a remedial action, which is used to enforce an order in a previous adjudication of the parties' claims." *Allsberry v. Flynn*, 666 S.W.3d 201, 204 (Mo. App. E.D. 2023).[11] The division of property set forth in a dissolution judgment is thus enforceable by contempt. *Alticor, Inc. v. Grissum*, 198 S.W.3d 629, 636 (Mo. App. S.D. 2006). Contempt proceedings do not concern the validity of the underlying judgment because "a contempt proceeding is brought expressly for the opposite purpose: to enforce the judgment, not annul it." *C.S.G. v. R.G.*, 559 S.W.3d 416, 420 (Mo. App. E.D. 2018). Use of an appeal from a contempt judgment or warrant of commitment to challenge the underlying judgment the contempt judgment seeks to enforce constitutes an improper collateral attack on the underlying judgment that will not be tolerated.[12] *Id.*

---

[11]A civil contempt proceeding is in contrast to a criminal contempt proceeding, which "is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994).

[12]Even if the arguments raised in Ex-Husband's Rule 74.06(b) motion for modification or in his Rule 74.06(b) motion to set aside were within the proper scope of this appeal (which they are not), the arguments would be barred by the law-of-the-case doctrine. "The law of the case is a rule which applies only when a *reviewing court* has

Ex-Husband's first, second, and third points on appeal are denied.

***Ex-Husband Did Not Sustain His Burden to Establish an Inability to Pay the Equalization Payment (Point Four)***

Ex-Husband's rambling fourth point relied on challenges the contempt judgment and the warrant of commitment based on his inability to pay the equalization payment. Ex-Husband's point relied on argues that he was not able to pay the equalization payment because:

> [H]is remaining assets were limited to only an IRA and his residence, prompting [Ex-Wife] to submit and the Court to act upon [Ex-Wife's] superfluous prayer to force the satisfaction of the Judgment through delivery of funds from a separate, diminutive Grantor Trust by the third-

already decided an issue in a case." *Frawley*, 637 S.W.3d at 147 (quoting *Angoff v. Am. Fin. Sec. Life Ins. Co.*, 891 S.W.2d 833, 836 (Mo. App. W.D. 1994)). Under the law-of-the-case doctrine, "successive appeals involving substantially the same issues and facts" may not relitigate "all points presented and decided, either directly or by necessary implication" by a prior appeal. *Id.* (quoting *Angoff*, 891 S.W.3d at 836; *State ex rel. Woodland Lakes Trusteeship, Inc. v. Frawley*, 554 S.W.3d 886, 890-91 (Mo. App. E.D. 2018)). "Moreover, 'the decision of a court is the law of the case for all points presented and decided, as well as matters that arose prior to the first adjudication and might have been raised by were not.'" *Id.* (quoting *Snelling v. Kenny*, 491 S.W.3d 606, 613 (Mo. App. E.D. 2016)).

Ex-Husband's motion for modification and later filed motion to set aside challenged the characterization and division of marital and non-marital property based on an alleged misrepresentation by Ex-Wife about a 2009 special warranty deed and based on alleged due process violations. The purported 2009 special warranty deed predates the dissolution judgment and could have been brought to the trial court's attention by Ex-Husband. The due process issues stem from Ex-Husband's continued disagreement with the trial court's characterization of all of the parties' property as marital property in part (according to Ex-Husband) as a "sanction" for Ex-Husband's failure to respond to related discovery. Both issues either were, or could have been, presented in and/or decided by this Court in *Brown I*. Further consideration of the issues is barred by the law-of-the-case doctrine. Were we to hold otherwise, "there would be no end of criticism, relitigation, re-examination, and reformulation." *Frawley*, 637 S.W.3d at 148 (quoting *Nance v. Maxon Elec., Inc.*, 425 S.W.3d 926, 931 (Mo. App. W.D. 2014)). We decline to give Ex-Husband the opportunity to engage in "endless litigation" regarding the division of marital property. *Id.* (quoting *Nance*, 425 S.W.3d at 931).

20

party Trustee, first, because the IRA was also held in trust and protected by Fidelity; second, because [Ex-Wife] had filed a Special Warranty Deed in Jackson County, removing it from the Marital Estate; and third, because per [Ex-Wife's] Exhibit 19, Monthly Statement, the separate, Grantors' Trusts are owned and controlled by Country Club Trust Company, who by the Trust Agreement and by [section] 456.5-502, RSMo, is restricted from taking such actions[,] in that the Court issued Orders anyway, which overlooked Husband's inability to pay and his inaccessibility to the keys to the jail with which to purge himself and which overlooked the impropriety of forcing the attachment of property which Husband does not possess.

For reasons we explain, Ex-Husband's fourth point on appeal is denied.

Before addressing the merits of Ex-Husband's fourth point, we address material violations of Rule 84.04 to determine whether they require the fourth point on appeal to be denied. First, point four seeks review of two, distinct trial court orders or judgments. A contempt judgment and a warrant for commitment are separate trial court rulings. *See Stuart v. Ford*, 292 S.W.3d 508, 516 (Mo. App. S.D. 2009) (noting that a point relied on challenging both a contempt judgment and a warrant of contempt improperly challenges "two separate and distinct actions of the trial court: first, the contempt portion of the [j]udgment; and second, the commitment order"). Accordingly, Ex-Husband's fourth point relied on violates Rule 84.04 as it is multifarious. *Id.* Though it is within our discretion to deny the fourth point on appeal on this basis alone, because Ex-Husband's briefing error does not impede our ability to review his common complaint about the contempt judgment and the warrant of commitment (that he is unable to pay), we exercise our discretion to review the fourth point on appeal *ex gratia*.

Second, Rule 84.04(e) requires the argument following a point relied on to include "the applicable standard of review." Ex-Husband's brief does not address the standard of

21

review applicable to the fourth point on appeal. The proper standard of review is controlled by the point relied on, as the argument portion of the brief cannot exceed the errors identified in the point relied on. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'"). Because we can easily discern the appropriate standard of review from Ex-Husband's point relied on, we *ex gratia* elect not to deny the point despite Ex-Husband's failure to comply with the plain requirements of Rule 84.04(e).

Ex-Husband's fourth point relied on accuses the trial court of error in "overlook[ing]" evidence of his inability to pay when it entered the contempt judgment and the warrant of commitment, and identifies the "overlooked" evidence as his IRA being "held in trust and protected by Fidelty," a special warranty deed that should have removed Ex-Husband's home from the marital estate, and trust funds as to which he is a beneficiary are "owned and controlled by Country Club Trust Company." The point relied on thus speaks to whether the trial court's entry of the contempt judgment and warrant of commitment were against the weight of the evidence with respect to the contested issue of Ex-Husband's ability to pay the equalization payment ordered by the dissolution judgment.

An "against-the-weight-of-the-evidence" challenge "presupposes that there is sufficient evidence to support the judgment." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014) (quoting *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 (Mo. banc 2014)). "The against-the-weight-of-the-evidence standard serves only as a check on a [trial] court's potential abuse of power in weighing the evidence, and an appellate court will reverse

22

only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* at 206. "[T]his standard of review takes into consideration which party has the burden of proof and that the [trial] court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Id.*

Applying this standard of review, we easily dispense with Ex-Husband's argument about the purportedly undisclosed 2009 special warranty deed which, according to Ex-Husband, resulted in the improper characterization of Ex-Husband's home as marital property. As we have already explained, this argument is foreclosed from appellate review because it was considered and rejected in the trial court's June 3, 2021 order denying Ex-Husband's motion for modification of the dissolution judgment and that order has not been appealed; because consideration of the argument in connection with Ex-Husband's present challenge of the contempt judgment and warrant of commitment would constitute an improper collateral attack on the dissolution judgment; and because the argument is foreclosed by the law-of-the-case doctrine in light of *Brown I*.

That leaves Ex-Husband's contentions that the trial court erroneously entered the contempt judgment and the warrant of commitment because it overlooked evidence that he is unable to pay the equalization payment from his residence (which he claims is encumbered by two secured loans), his IRA (which he claims is exempt from creditors due to the anti-alienation clause in the Employee Retirement Income Security Act of 1974 (ERISA)), or from his beneficiary interest in one or more trusts created by his parents because of a spendthrift clause in the trusts

"A prima facie case for civil contempt is established when the party alleging contempt proves: 1) the contemnor's obligation to pay a specific amount or perform an action as required by the [judgment]; and 2) the contemnor's failure to meet the obligation." *Wilson v. Wilson*, 640 S.W.3d 136, 139 n.2 (Mo. App. W.D. 2022) (quoting *Tashma v. Nucrown, Inc.*, 23 S.W.3d 248, 252 (Mo. App. E.D. 2000)). Once a prima facie case is established, the burden then shifts to contemnor to prove "his or her inability to make payments or perform an action and that non-compliance was not an act of contumacy." *Id.* (quoting *Tashma*, 23 S.W.3d at 252).

Ex-Husband does not challenge that at the time of the show cause hearing on Ex-Wife's application for contempt, a prima facie case for civil contempt was established as it is uncontested that the dissolution judgment ordered payment of the equalization payment, and that the equalization payment had not been paid in full. Thus, the burden shifted to Ex-Husband to prove his inability to pay the equalization payment, as ordered.

During the show cause hearing, Ex-Wife testified that the dissolution judgment detailed all of Ex-Husband's substantial assets, and that since the time of entry of the dissolution judgment, in addition to those assets, Ex-Husband's interest in trusts set up by his parents had been funded. She admitted Exhibit 19 into evidence, which demonstrated that as of April 30, 2021, Ex-Husband had a funded trust account in the amount of $768,637.40. Ex-Wife also admitted into evidence Exhibit 20, which established that Ex-Husband had a second funded trust account at the same bank with a balance of $128,166.92. On cross-examination, Ex-Wife testified that she believed Ex-Husband had access to the funds in the funded trust accounts, as she was personally aware of

24

disbursements that had been made from the accounts to pay Ex-Husband's legal fees in litigation involving his sister.

Ex-Husband also testified during the show cause hearing. He testified that the trust account funds were protected from collection efforts by creditors because of a spendthrift clause, and that additional time was needed for he and his attorney to determine whether Ex-Husband, as a beneficiary of the trusts, could secure the trustee's permission to access the funds in order to pay the equalization payment. Ex-Husband testified that he understood he had an obligation to pay the equalization payment, and that he was working with the financial institution where his funded trust accounts were housed "to see how those funds could be disbursed" to fulfill his court-ordered obligation. Ex-Husband did not admit any exhibits into evidence to establish that his ability to access the trust funds was restricted for the purpose of paying his legal obligations. During cross-examination, Ex-Husband confirmed that a document referred to as Exhibit 50 was a spreadsheet prepared by Ex-Husband in connection with the dissolution proceeding that detailed his assets and liabilities (without reference to the trust accounts as to which he is a beneficiary). Ex-Husband summarily testified that many of the assets listed on Exhibit 50 had since been spent down by him. There was no discussion about Ex-Husband's IRA accounts during the show cause hearing.

On June 10, 2021, the trial court entered the contempt judgment. Relevant to this appeal, the trial court found:

> No credible evidence was presented showing [Ex-Husband] does not have the ability to pay [the equalization payment]. He is able-bodied, in good health, and has significant financial means. He has not met his burden to

25

> show he has an inability to pay or that his inability to pay was not the consequence of his own intentional conduct. [Ex-Husband] has failed to comply with the Judgment of Dissolution of Marriage. His inactions have been intentional, willful, and a deliberate failure to abide by the Court's Judgment.

The trial court's finding in the contempt judgment is supported by substantial evidence. Ex-Husband's current contention that the trial court overlooked the encumbrances on his home and the inaccessibility of his IRA to creditors is immaterial to our review of the contempt judgment as neither subject was discussed during the show cause hearing. And, though Ex-Husband claimed that the trusts as to which he is a beneficiary have a spendthrift clause, Ex-Husband's self-serving assertion to this effect was not proven up by admission of the trust documents into evidence and was deemed not credible by the trial court. Moreover, Ex-Husband's testimony in response to his own attorney's direct examination confirmed that there is a difference between whether a creditor can pursue collection efforts against an asset in a trust with a spendthrift clause, and whether a beneficiary can secure a trustee's acquiescence to permit withdrawal of trust funds to pay a beneficiary's legal obligations. Ex-Husband confirmed in response to questioning that he was (allegedly) in the process of securing that acquiescence. Ex-Husband's fourth point on appeal is denied insofar as the contempt judgment is concerned because the trial court's finding that he had the ability to pay the equalization judgment was not against the weight of the evidence, particularly in light of the fact that Ex-Husband bore the burden to prove his inability to pay.

Ex-Husband raises the same claim that the trial court overlooked evidence of his inability to pay the equalization payment in challenging issuance of the warrant of

26

commitment. It is true, that incarceration is only justified as a means of enforcing a contempt judgment if the contemnor has the ability to purge himself of the contempt, *i.e.*, to pay the amount ordered by the previous judgment. *Caldwell v. Caldwell*, 341 S.W.3d 734, 736 (Mo. App. E.D. 2011). However, as is the case with the contempt judgment, the burden remains on the contemnor to demonstrate an inability to pay once a prima facie case of contempt has been established.

> Before an order of commitment may issue, the trial court must determine that the debtor has either the ability to pay or intentionally created a situation of noncompliance. . . . Once the creditor establishes a failure to pay, the debtor must come forward with proof of inability to pay that is not due to the debtor's own conduct. If the court finds the debtor has intentionally violated its payment order, it may then enter a judgment of contempt and issue an order of commitment.

*State ex rel. Nesser v. Pennoyer*, 887 S.W.2d 394, 396 (Mo. banc 1994) (citations omitted);[13] *see also Wilson*, 640 S.W.3d at 139 n.2.

---

[13]We are aware of the holding in *C.S.G. v. R.G.*, 559 S.W.3d 416, 422 (Mo. App. E.D. 2018), that a "trial court may not simply rely on [a contemnor's] failure to assert or prove the affirmative defense of inability to pay" to issue "an order committing a person to prison," and instead that a trial court must affirmatively "convince itself with sufficient evidence that [a contemnor] has the present ability to pay" before imprisonment is justified as a remedy or method to encourage a contemnor to purge the contempt. In so holding, the Eastern District affirmatively elected not to follow *Brown v. Brown*, 670 S.W.2d 167, 170 (Mo. App. W.D. 1984), and *State ex rel. Watkins v. Watkins*, 972 S.W.2d 609, 611 (Mo. App. S.D. 1998), both of which suggest that a contemnor's "failure to prove an inability to pay suffices to support a commitment order as well" as a contempt judgment. *C.S.G.*, 559 S.W.3d at 422 n.4. No subsequent case has cited *C.S.G.* for the proposition that the affirmative defense of inability to pay (and the contemnor's corresponding burden of proof) fails to extend to the remedy of issuance of a warrant of commitment as a mechanism for encouraging a contemnor to purge the contempt. Even more importantly, *C.S.G.* did not address the Missouri Supreme Court's holding in *Pennoyer*, which plainly provides that the burden to prove the inability to pay remains on the contemnor in connection with both a contempt judgment and the issuance of a warrant of commitment. *Pennoyer*, 887 S.W.2d at 396.

27

During the sentencing hearing on November 10, 2021, the trial court considered whether to act on the threat of confinement set forth in the contempt judgment in light of Ex-Husband's failure to purge himself of the contempt as ordered by the contempt judgment. Ex-Husband was asked by his counsel whether he had attempted to satisfy the equalization payment obligation. Ex-Husband explained that he has an IRA in a revocable trust, the "Richard Brown Revocable Trust." Ex-Husband testified that he is willing to satisfy his obligation to pay the equalization payment, but that according to his conversations with Fidelity (the trustee of the IRA), the court would need to issue a qualified domestic relations order to transfer the IRA to Ex-Wife. The trial court then asked whether Ex-Wife was interested in accepting transfer of the IRA in satisfaction of the equalization payment obligation. Ex-Wife's counsel advised she was not and noted that Ex-Husband has a lower effective tax rate than Ex-Wife, and can liquidate his own IRA, and then pay the cash to Ex-Wife. On cross-examination, Ex-Husband confirmed that his proposal to transfer his IRA to Ex-Wife so that she could "hold it" was designed to avoid the tax implications of liquidating the IRA.

When asked about the funds from his parents' trusts, Ex-Husband denied having accessed those funds to pay nearly $100,000 in his own attorneys' fees "fighting about [the] equalization payment," and said instead that he "paid for that on [his] own." Ex-Wife again emphasized on cross-examination that Ex-Husband had access the funded trust accounts to pay other legal fees incurred in the trust litigation with his sister.

Following the evidence, the parties made brief arguments to the court. The trial court expressly noted that it had previously found Ex-Husband had the ability to pay the

28

equalization payment, and that the court believed it appropriate to grant Ex-Wife's request for a warrant of commitment. The next day, the trial court entered the November 11, 2021 warrant of commitment.

The warrant of commitment was supported by the weight of the evidence. Ex-Husband admitted he paid $100,000 from his own funds "fighting about the equalization payment," and thus that he had ready access to liquid assets to do so. He admitted that he would prefer to transfer the IRA to Ex-Wife in lieu of liquidating the IRA to pay Ex-Wife cash as required by the dissolution judgment so he could avoid the tax implications of liquidating the IRA. Notably, the record reflects Ex-Husband made the same argument in the motion for modification of the dissolution judgment when he complained about the "equity" of the dissolution judgment because (among other things) if he were required to liquidate his IRA accounts to pay the equalization payment, he would incur tax penalties. He similarly argued in the later filed motion to set aside (which sought to set aside both the dissolution judgment and the contempt judgment) that he merely lacks liquidity to pay the equalization payment and should not be found in contempt for refusing to liquidate his retirement account to pay the equalization payment. Then, in a later filed motion to set aside the contempt judgment or warrant of commitment, Ex-Husband once again argued that the trial court "overlooked the 'particulars' of [Ex-Husband's] hardship and the resultant difficulty of coercive liquidation of assets not intended for such." Finally, on appeal, Ex-Husband argues in his brief that he "cannot be found to be in contempt for failure to liquidate his retirement accounts."

29

Ex-Husband cites no authority for the proposition that liquidity of assets and/or the availability of ready cash on hand is required to find that an alleged contemnor has an ability to pay as the requisite for entering a contempt judgment or for issuing a warrant of commitment. We are aware of no such authority. Rather, it is plain that Ex-Husband admitted he has access to financial resources to pay his legal obligations when he wants to do so (as in the case of paying nearly $100,000 in legal fees from his own resources to contest the equalization payment), and that he has access to, *at a minimum*, his IRA accounts to pay the equalization payment, though he wants to avoid liquidating those accounts. The fact that Ex-Husband may incur tax liability should he elect to liquidate an IRA to pay the court-ordered equalization payment does not render him unable to pay.

Nor are we persuaded by Ex-Husband's argument that his IRA accounts are protected by ERISA's anti-alienation clause from collection efforts by creditors. This argument misses the mark. The warrant of commitment is not a collection effort by a creditor. The warrant of commitment is a tool to encourage Ex-Husband to purge his contempt. If he elects to do so by liquidating an IRA account, that is a choice within his control. Regardless, IRA's are excluded from ERISA's anti-alienation protection set forth in 29 U.S.C.A. section 1056(d)(1) (Westlaw through Pub. L. No. 118-13). *See State ex rel. Koster v. Bailey*, 493 S.W.3d 423, 429 (Mo. App. W.D. 2016).

The trial court correctly found on the record during the sentencing hearing and prior to issuing the warrant of commitment that Ex-Husband had the ability to pay the

equalization payment. The weight of the evidence supports this finding, particularly in light of the fact that it was Ex-Husband's burden to prove to the contrary. [14]

Ex-Husband's fourth point on appeal is denied.

**Ex-Wife's Motion to Dismiss Appeal and for Sanctions**

Ex-Wife has filed a motion to dismiss Ex-Husband's appeal and for sanctions. We elected to take the motion with the case.

Ex-Wife asserts that Ex-Husband's "multiple violations of Missouri Supreme Court Rules 81 and 84 alone warrant dismissal of the instant appeal." Ex-Husband's briefing errors have not impeded our review of his points on appeal on their merits, and exercising our discretion to review the appeal *ex gratia* is appropriate, despite violations

---

[14]We recognize that a warrant of commitment is required to make findings about the contemnor's ability to pay, and that "[w]ithout such a finding, there is no basis for commitment." *Lyons v. Sloop*, 40 S.W.3d 1, 12 (Mo. App. W.D. 2001) (quoting *Pennoyer*, 887 S.W.2d at 396). The warrant of commitment did not include findings about Ex-Husband's ability to pay, despite oral findings to this effect on the record during the sentencing hearing. However, Ex-Husband's fourth point on appeal does ***not*** challenge the form of the warrant of commitment by claiming that it was issued without required findings on the subject of his ability to pay the equalization payment, even though he raised this issue in the motion to set aside contempt judgment or warrant of commitment filed on November 21, 2021. Instead, Husband's fourth point on appeal only asserts that the contempt judgment and warrant of commitment were entered against the weight of the evidence with respect to the finding that he had the ability to pay the equalization payment, an issue as to which Ex-Husband bore the burden of proof. Though the argument portion of Ex-Husband's brief cites to *Yonker v. Yonker*, 423 S.W.3d 848, 859 (Mo. App. S.D. 2014), for the proposition that a warrant of commitment must expressly find that a contemnor has the present ability to pay, that fleeting argument exceeds the scope of Ex-Husband's fourth point relied on. Arguments that are not fairly encompassed within Ex-Husband's fourth point relied on are not preserved for appellate review. Rule 84.04(e); *Campbell v. Union Pac. R.R. Co.*, 616 S.W.3d 451, 461 (Mo. App. W.D. 2020).

31

of Rule 84.04 that are herein noted. *See Gan v. Schrock*, 652 S.W.3d 703, 711 (Mo. App. W.D. 2022) ("And, though we retain discretion to review an appeal despite briefing deficiencies, we will not exercise our discretion in favor of review where the deficiencies impede disposition on the merits."). Ex-Wife's motion to dismiss Ex-Husband's appeal is denied.

Ex-Wife's also argues that sanctions should be awarded pursuant to Rule 84.19 because Ex-Husband's appeal is frivolous. Rule 84.19 provides: "If an appellate court shall determine that an appeal is frivolous it may award damages to the respondent as the court shall deem just and proper." Rule 84.19 has two purposes: "(1) to prevent congestion of appellate court dockets with meritless cases which . . . contribute to delaying resolution of meritorious cases and (2) to compensate respondents for the expenses they incur in the course of defending these meritless appeals." *Brown v. Brown*, 645 S.W.3d 75, 84 (Mo. App. W.D. 2022) (quoting *Capital One Bank v. Hardin*, 178 S.W.3d 565, 577 (Mo. App. W.D. 2005)). An award of damages is appropriate when "an appeal on its face is totally devoid of merit." *Id.* (quoting *Capital One Bank*, 178 S.W.3d at 577-78). This is determined on a case-by-case basis, requiring us to evaluate "whether the appeal presents any justiciable question and whether it is so recognizable as devoid of merit on the face of the record that there is little prospect of success." *Id.* (quoting *Vanschoiack v. Adkins*, 854 S.W.2d 432, 435 (Mo. App. W.D. 1993)).

Ex-Wife asserts that we "should award the 'drastic remedy' of damages under . . . Rule 84.19[] because despite this Court's repeated warnings and 'efforts to dissuade [Ex-Husband] from continuing to attempt to litigate issues that have been finally decided,'

32

[Ex-Husband] has once again initiated a frivolous civil appeal in his most recent attempt to relitigate matters previously decided by this Court." (citing *Brown*, 645 S.W.3d at 85). Ex-Wife is referring to the opinion we handed down last year in Ex-Husband's fourth appeal regarding trusts established by his parents. But this appeal does not involve a dispute regarding the trusts established by Ex-Husband's parents. This appeal has been taken from a contempt judgment and a warrant of commitment entered in the parties' dissolution proceeding. While three of Ex-Husband's four points relied on have been summarily denied because they were not preserved for appellate review, Ex-Husband's fourth point relied on disputed the sufficiency of the evidence to support the trial court's entry of the contempt judgment and the warrant of commitment. That issue has not been previously addressed or resolved by this Court, and was a proper subject for appellate review.

Ex-Wife's motion for sanctions is denied.

### Conclusion

The trial court's June 10, 2021 contempt judgment and November 11, 2021 warrant of commitment are affirmed. After Ex-Husband filed his appeals, Ex-Husband requested leave to file a supersedeas bond to stay the warrant of commitment pending appeal. Pursuant to Rule 81.09(b), a supersedeas bond for that purpose was approved by the trial court in the amount of $257,107.55. Ex-Husband filed a cash supersedeas bond with the trial court in that amount. That cash supersedeas bond was "conditioned for the satisfaction of the [contempt judgment and warrant of commitment] in full together with costs, interest, and damages for delay, if . . . [Ex-Husband's] appeal is dismissed or the

33

judgment [appealed from] is affirmed."  *See* Rule 84.09(b).  In addition to ordering Ex-Husband to be taken into custody, the warrant of commitment expressly advised Ex-Husband how he could purge himself of contempt by paying Ex-Wife $257,108.55 in certified funds.  The supersedeas bond posted by Ex-Husband is in the cash amount of $257,107.55.

Having affirmed the contempt judgment and the warrant of commitment, this Court exercises its authority pursuant to Rule 81.10[15] to order the immediate release of the cash supersedeas bond on deposit with the trial court to Ex-Wife.

_____
Cynthia L. Martin, Judge

All concur.

---

[15]Rule 81.10 provides that "[t]he bond . . . shall be filed in the trial court and . . . shall be subject to the jurisdiction of the trial and appellate court."